IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.  Criminal Action No. **3:16CR157**

**AMY LYNN GALLOWAY,**

Petitioner.

## MEMORANDUM OPINION

Amy Lynn Galloway, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 Motion ("§ 2255 Motion," ECF No. 43).[1] Galloway contends that she was denied the effective assistance of counsel at sentencing. Specifically, Galloway contends:

| | |
|---|---|
| Claim One | "Movant contends that counsel was ineffective for failing to argue the correct sentencing guideline under fraud and deceit." (ECF No. 43, at 4.) At sentencing, Galloway had "a base level of (7) and a (16) level enhancement because of the actual loss of more than $1.5 million dollars." (*Id.*) Galloway contends that her base level should have been 6 and her enhancement for the actual loss should have been 12. (ECF No. 44, at 3.) Galloway asserts that counsel was ineffective for failing to address these errors. |
| Claim Two | "Movant contends that the abuse of trust enhancement was inappropriately applied to her sentence . . . ." (ECF No. 43, at 5.) |

As explained below, Galloway's claims lack merit and will be DISMISSED.

### I. Pertinent Factual and Procedural History

On January 18, 2017, pursuant to a plea agreement, Galloway pled guilty to one count of wire fraud. (ECF No. 11, at 1.) As part of the Plea Agreement and in accordance of Federal Rule of Criminal Procedure 11(c)(1)(B), the parties made the following non-binding recommendations with respect to the Sentencing Guidelines:

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization and punctuation in the quotations from Galloway's submissions.

    a. The applicable guideline section is U.S.S.G. § 2B1.1:
    b. The base offense level is 7;
    c. A 16–level enhancement is applicable because the actual loss was more than $1.5 but less than $3.5 million
    d. A 2–level enhancement is applicable because the defendant abused a position of trust, thus increasing the offense level from 23 to 25;
    e. The defendant is in a Criminal History Category I;
    f. A three-level reduction for acceptance of responsibility is appropriate, thus reducing the offense level to 22 and producing a guideline range of 41–51 months.

(ECF No. 11, at 4.)

The Presentence Investigation Report tracked the above recommendations. (ECF No. 25, ¶¶ 26–28, 30, 32, 34–35, 86.) At sentencing, the Court denied Galloway's Motion for a Variance Sentence and sentenced Galloway to 46 months of imprisonment.[2] (ECF No. 34.)

## II. Analysis

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective

---

[2] Bureau of Prisons records indicate that Galloway is scheduled for release on August 23, 2020. *See* Fed. Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (search BOP Register Number 90775-083) (last visited April 13, 2020).

assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

As noted above, at sentencing, Galloway had a Base Offense Level 7 and a 16–level enhancement because of a loss amount of $1.5 million dollars. Galloway contends that her Base Offense Level should have been 6 and her enhancement for the actual loss should have been 12. (ECF No. 44, at 3.). Galloway's argument lacks merit. The pertinent provision of the 2016 Sentencing Guidelines, § 2B1.1(a), provides:

> (a) Base Offense Level:
> (1) 7, if (A) the defendant was convicted of an offense referenced in this guideline; and (B) that offense of conviction has a statutory maximum term of imprisonment of 20 years or more; or
> (2) 6, otherwise.

U.S. Sentencing Guidelines Manual § 2B1.1(a) (U.S. Sentencing Comm'n 2016) ("USSG"). Galloway was convicted of wire fraud, an offense referenced in the above guideline, and the maximum penalty for that offense was twenty years of imprisonment. 18 U.S.C. § 1343. Thus, Galloway's Base Offense Level was properly calculated as 7. Furthermore, a 16–level enhancement was applicable because the actual loss of at least $1,564,785.62 was more than $1.5 million, but less than $3.5 million. USSG § 2B1.1(b)(1)(i). Because Galloway fails to demonstrate deficiency of counsel or prejudice, Claim One will be DISMISSED.

In Claim Two, Galloway contends that counsel should have objected that Galloway did not qualify for a two-level enhancement for abuse of trust under USSG § 3B1.3. That provision states:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it

3

may be employed in addition to an adjustment under §3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under §3B1.1 (Aggravating Role).

USSG § 3B1.3. The pertinent application note provides:

> *Definition of "Public or Private trust."* refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

*Id.* cmt. n.1. "The decision of whether a person abused a position of trust, including whether that person held a position of trust in the first place, is . . . primarily a factual determination best left to the district court." *United States v. Helton*, 953 F.2d 867, 869 (4th Cir. 1992).

The United States Court of Appeals for the Fourth Circuit has stated that courts should consider the following three factors in determining whether a defendant held a position of trust:

> First, courts ask whether the defendant had special duties or "special access to information not available to other employees." Second, the defendant's level of supervision or "degree of managerial discretion" is relevant. Bank tellers who embezzle from their employers provide an example of a situation where there is little trust to abuse because the employees are closely supervised, and it is expected that wrongs they commit will be readily detected. Third, the analysis also entails an examination of "the acts committed to determine whether this defendant is 'more culpable' than others who hold similar positions and who may commit crimes."

*United States v. Glymph*, 96 F.3d 722, 727 (4th Cir. 1996) (quoting *United States v. Gordon*, 61 F.3d 263, 269 (4th Cir. 1995)). Further, "[w]hether a defendant held a position of trust must be

'approached from the position from the perspective of the victim.'" *Id.* (quoting *Gordon*, 61 F.3d at 269.)

Galloway's crimes flow from her position as bookkeeper at Colonial Homecrafters ("CHC"), a small family run construction business. As the Presentence Investigation Report explained:

> As a bookkeeper for CHC, Mrs. Galloway's duties included opening all business-related mail, to include vendor invoices, bank statements, credit card statements, tax compliance, etc.; sorting all vendor invoices by job/project, and then providing the same to Willie and/or Eddie Goode (owners/operators of CHC) for their review and payment instructions (i.e. amount, date to be paid); preparing and printing vendor checks in the accounting system and coding each expense to the proper general ledger account in the accounting system for each company and then combining the prepared vendor checks with the vendor invoices, and routing the same to Willie and/or Eddie Goode for their signatures on the checks; mailing the vendor checks with remittances to the applicable vendors; administering the payroll for CHC, including preparation of weekly payroll checks, maintaining payroll journals, and posting payroll to the proper general ledger accounts; handling the federal and state payroll tax deposits (for employee withholdings and FICA), and state unemployment filings; preparing quarterly 941s for payroll, and annual W-2s, as well as all IRS filings related to the same; providing CHC's outside Certified Public Accountant with quarterly and annual financial statements (i.e., trial balances, income statements, balance sheets) for each CHC entity, which the outside CPA then utilized to prepare the annual corporate tax returns; and paid the monthly credit card bills for the company via online transactions, and spread the applicable credit card charges to the appropriate general ledger accounts in the CHC accounting system.
> Mrs. Galloway used her position as bookkeeper to misappropriate funds from Colonial Homecrafters by writing unauthorized checks, to wit: she circumvented the system in order to have Willie Goode provide her with blank corporate checks, which she then used to make the checks payable to herself or her children and used the funds for personal purposes; and fraudulently misusing the CHC corporate credit card accounts for personal purposes. She also would disguise and conceal the check misappropriations from CHC and its outside accounting firm by not recording the fraudulent checks in the accounting records she regularly prepared, maintained, and submitted to the outside accountants for tax purposes. It was a further part of the scheme that from 2009 to 2016, she deposited approximately 578 fraudulent CHC's checks in the amount of $1,118,403.09 into personal bank accounts and misused company credit cards over 1,000 times in the total approximate amount of $446,382.53.

(ECF No. 25 ¶¶ 22, 23 (paragraph numbers omitted).)

Galloway's position as bookkeeper gave her special access to the funds of CHC not available to other employees of the company. *See Glymph*, 96 F.3d at 727 (citing *Gordon*, 61 F.3d at 269). The owners of CHC, Willie and Eddie Goode, gave Galloway significant discretion in managing the company's finances and relied on her word as to whether CHC was fiscally sound during the housing downturn in 2009 and thereafter. (ECF No. 25 ¶ 20.) While Galloway funneled over one and a half million dollars of CHC's funds for her personal use, Willie and Eddie Goode were forced to live off their savings and refinance their homes to keep the company afloat. (*Id.*) Under these circumstances and from the perspective of the Goodes, as victims, Galloway clearly abused a position of trust and warranted a two-level enhancement under USSG § 3B1.1. *See United States v. Allen*, 201 F.3d 163, 166–67 (2d Cir. 2000) (upholding enhancement for an officer manager who "possessed 'broad responsibilities,' which she used both to pilfer funds from her employers and to falsify records that could have exposed her wrongdoing." (citing *United States v. Jolly*, 102 F.3d 46, 49–50 (2d Cir. 1996)). Counsel reasonably refrained from challenging the enhancement for abuse of trust. As Galloway fails to demonstrate deficiency of counsel or prejudice, Claim Two will be DISMISSED.

### III. Conclusion

Galloway's claims and the action will be DISMISSED. The § 2255 Motion (ECF No. 43) will be DENIED. A certificate of appealability will be DENIED.[3]

An appropriate Order shall accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: April 13, 2020
Richmond, Virginia

---

[3] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Galloway has not satisfied this standard.